**UNITED STATES v. VIDAVER et al.**

**Cr. No. 2174.**

District Court, E. D. Virginia,
at Alexandria.

Aug. 28, 1947.

George R. Humrickhouse, Asst. U. S. Atty., of Richmond, Va., for the United States.

No appearance for Vidaver.

BARKSDALE, District Judge.

In November, 1941, an indictment, containing three counts, was returned in this court against Richard Vidaver and another, charging in the first two counts violations of the Mail Fraud Statute, 18 U.S.C.A. § 338, and in the third count, a violation of the Securities Act of 1933, 15 U.S.C.A. § 77q (a) (1). On February 10, 1942, Vidaver, who was represented by counsel, entered his plea of nolo contendere to the indictment, and was placed on probation upon the condition of his good behavior and of his making restitution. On March 8, 1943, upon the charge that he had violated the terms and conditions of his probation, this court, Honorable Luther B. Way presiding, revoked his probation and imposed upon him a sentence of five years' imprisonment, and he thereupon began the service of this sentence.

On January 16, 1947, Vidaver, by counsel, filed a motion to vacate the sentence theretofore imposed upon him, which was overruled by order of this court entered February 14, 1947, Honorable Robert N. Pollard presiding.

The matter is now before me upon Vidaver's motion that he be allowed to withdraw his plea of nolo contendere, under the provisions of Rule 32(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, and that the indictment against him be dismissed. Rule 32(d) is as follows: "A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

Of course, in this case, sentence has been long since imposed, and the only basis upon which I might now properly grant the pending motion would be "to correct manifest injustice".

Government counsel has filed a memorandum in opposition to the granting of this motion, together with an affidavit, and Vidaver has filed his reply to this memorandum. In his motion and argument, Vidaver admits that he was represented by counsel, that he voluntarily entered his plea of nolo contendere, that he did commit the frauds charged in the indictment, but he contends that under the doctrine enunciated in the case of Kann v. United States, 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, 157 A.L.R. 406, the mailings set out in the indictment against him were not for the purpose of executing the fraudulent scheme, but that the mailings occurred after the fruition of the scheme, and that therefore he was not guilty as charged in the indictment. Of course, by his plea of nolo contendere, Vidaver admitted everything charged against him in the indictment. The Kann case was not decided until nearly three years later, but Vidaver contends that the facts of his case are so closely analogous to the facts of the Kann case that the result of the decision therein is that the facts alleged in the indictment against him constitute no federal crime, and that therefore it would be a manifest injustice not to permit him to now withdraw his plea. I am not so satisfied.

In the first place, it is to be noted that the first count of the indictment charges that Vidaver, "for the purpose of executing said scheme and artifice to defraud, unlawfully, knowingly and feloniously, to-wit, on or about the 19th day of August, 1939, did cause to be delivered in Herndon, in Fairfax County, Virginia, in the Eastern District of Virginia and within the jurisdiction of this court, by the United States mails, according to the directions thereon, a certain envelope bearing the necessary postage, addressed to Citizens National Bank of Herndon, Herndon, Virginia, etc." (Italics mine).

The second count of the indictment charges that, "for the purposes of executing said scheme and artifice, the said Richard Vidaver * * * did unlawfully, knowingly and feloniously, on or about the 7th day of September, 1939, cause to be delivered at Herndon, Fairfax County, Virginia, in the District and jurisdiction aforesaid, by the United States mails, a certain envelope bearing the necessary postage, addressed to the Citizens National Bank of Herndon, Herndon, Virginia, etc." (Italics mine).

The third count of the indictment charges that, "the said Richard Vidaver * * * on or about the 8th day of September, 1939, in the District and jurisdiction aforesaid, so having devised said scheme and artifice to defraud, did unlawfully, knowingly and feloniously, in the sale of securities, to-wit, an investment contract involving profits and income to be derived from investments and whiskey warehouse receipts employ said scheme and artifice to defraud, by the use of the United States mails, in the manner following: * * *" (Italics mine).

Thus, it will be seen that when he entered his plea Vidaver admitted, in each count, not only the scheme to defraud, and the use of the mails, but also that the mails were used for the purpose of the fraud. It is, therefore, manifest that at this late date the burden upon Vidaver to satisfy the court that the decision in the Kann case is so far reaching as to render his conviction upon his plea of guilty, a manifest injustice, is a very heavy one. In view of Vidaver's admission of record by his plea that he used the mails for the purpose of defrauding his victim, I am not at all sure that it is proper for me to now reexamine the situation as of the time of his plea in the light of the Kann decision. Vidaver was in quite a different position from the defendant in the Kann case. Kann went to trial and not only denied his use of the mails for the purpose of fraud, but also vigorously denied any fraud on his part. However, I do not deem it necessary to give this question much thought, because, brushing aside all technicalities and giving full force and effect to the Kann decision as of the time of defendant's plea, and considering the matter as if Vidaver had gone to trial on a plea of not guilty and had moved for a directed verdict of acquittal on the facts as they are

presented to me, I am satisfied that I would overrule his motion.

In the Kann case, four justices dissented, with a vigorous dissenting opinion by Mr. Justice Douglas. Of course, this does not detract from the binding effect of the majority opinion, but it is an indication that the doctrine of the majority opinion should not be extended by implication. In the Kann case, two checks were involved. Before the mailing, one of these checks was cashed at a local bank, and the other one was deposited and credited to the account of one of the defendants. Both checks were then mailed to the drawee bank. The court held that under the provisions of the Uniform Negotiable Instruments Act, effective in Maryland, at page 94 of 323 U.S., at page 150 of 65 S.Ct., 89 L.Ed. 88, 157 A.L.R. 406: "* * * The banks which cashed or credited the checks, being holders in due course, were entitled to collect from the drawee bank in each case and the drawer had no defense to payment. The scheme in each case had reached fruition. The persons intended to receive the money had received it irrevocably. It was immaterial to them, or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank. It cannot be said that the mailings in question were for the purpose of executing the scheme, as the statute requires."

In the instant case, the situation is quite different. According to the affidavit of an official of the bank, filed by the Government, the checks here were not cashed, but were accepted *for collection* by the bank. That these checks were accepted for collection is substantiated by the language of the deposit slips used, which in part provides: "The depositor agrees that all items entered for deposit or collection are received by the Western National Bank of Baltimore, Maryland, as agent of the depositor for collection. * * *"

While the Uniform Negotiable Instruments Act was in force in Maryland, it is also provided by Maryland Law that, where checks are accepted by a bank for collection, the Bank does not become a holder in due course, but assumes only an agency relationship. Flack's Annotated Code of Maryland, Article 11, Section 109. While is is true that two small withdrawals were permitted in this case prior to the payment of the deposited checks by the drawee bank, it appears from the affidavit filed by the Government that these were the result of oversight, and as to nearly all of the money here involved, no withdrawals were permitted until final collection of the checks deposited and mailed to the drawee bank. Not only does the majority opinion in the Kann case make it plain that the decision was based upon the conclusion that the checks there involved were taken by the local banks as holders in due course, but the first sentence of the minority opinion is as follows: "I hardly think we would set this conviction aside if the collecting bank instead of cashing the checks took them for collection only and refused to pay the defendants until the checks had been honored by the drawee. It is plain that the mails would then be used to obtain the fruits of the fraud. * * *"

Inasmuch as here the checks were accepted by the bank for collection only, it appears to me plain that the doctrine of the Kann case is not here applicable.

In the majority opinion of the Kann case, the court said at page 94 of 323 U.S., at page 151 of 65 S.Ct., 89 L.Ed. 88, 157 A.L.R. 406: "Also to be distinguished are cases where the use of the mails is a means of concealment so that further frauds which are part of the scheme may be perpetrated."

I am also inclined to think that the situation here presented falls into that category. The Government contends that the fraudulent scheme here was a continuing one and the use of the mails was necessary to keep up the fraudulent scheme. With this, I am inclined to agree.

From the foregoing, it will be seen that it is my conclusion that Vidaver has entirely failed to show that he has been the victim of manifest injustice. Therefore, his motion that he be allowed to withdraw his plea, will be overruled. I do not find it necessary to consider whether any distinction should be drawn between the situation presented by Counts 1 and 2 and Count 3.