**UNITED STATES v. PIHAKIS.**
No. 13606.

United States District Court
W. D. Pennsylvania.
Aug. 13, 1954.

Edward C. Boyle, U. S. Atty., and W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

David H. Weiner, Washington, Pa., for defendant.

MURPHY, District Judge.

Defendant found guilty by verdict of a jury on two counts of wilful misapplication, 18 U.S.C.A. § 656, Id. § 2, and on one count of violating the mail fraud statute, 18 U.S.C.A. § 1341, Id. § 2, moves in arrest of judgment and for a new trial.

Defendant's motion based upon the sufficiency of the indictment as to counts 1 and 2, being similar to reasons asserted in United States v. Caplan, D.C., 123 F.Supp. 862, will for the reasons therein stated be denied. As to count 3, see Webb v. United States, 10 Cir., 1951, 191 F.2d 512, at page 514; Bauman v. United States, 5 Cir., 1946, 156 F.2d 534, at pages 536–537; Rosenbloom v. Hunter, 10 Cir., 1944, 143 F.2d 673, at page 676; United States v. Crummer, 10 Cir., 1945, 151 F.2d 958, at pages 962–963.

In support of his motion for a new trial, defendant argues[1] that as a mat-

1. A pre-trial motion for continuance because of allegedly prejudicial publicity as to defendant, being without merit, was denied. See United States v. Caplan, supra.

ter of law, the evidence is insufficient to support a conviction under count 3; that as to all counts, in view of the evidence presented by defendant, the court erred in not affirming his theory of defense as stated in his points for charge. Absent a request therefor by either party, we do not have the aid or benefit of a transcript of testimony and must therefore rely upon notes and memory.

Applying the usual test in support of the verdict, see United States v. Stoehr, D.C., 100 F.Supp. 143, at page 149, it appears from substantial competent and credible evidence that defendant and his wife had a joint account under the name of Olympic Restaurant in the Citizens Trust Company of Cannonsburg, Pennsylvania, their home town. They were not depositors in the First National Bank of Cecil, some seven or eight miles away.

Upon the death of John F. Wagner, vice president and cashier of the Cecil bank, FDIC examiners, upon assuming charge of the bank's affairs, found among its papers sixteen unposted checks of defendant dated over a two year period, including those in counts 1 and 2.

From an examination and analysis of the records, books and accounts in both banks insofar as they affected the defendant and from admissions by the defendant, the evidence showed that over a period of eighteen months the defendant, knowing that the balance in his account was under $10, at frequent intervals—two or three times weekly—drew checks thereon to cash, aggregating on each occasion over $4000. By pre-arranged plan with Wagner defendant cashed the checks at the Cecil bank, either through Wagner or by his express authorization. The checks were then transmitted through the mails to the Pittsburgh branch of the Federal Reserve Bank of Cleveland and in turn to the Citizens Trust Company, to be charged against defendant's account and the Cecil bank credited accordingly. Meanwhile, usually on the day of the check's arrival at the Citizens Trust Company, defendant would make a deposit to cover. Most of the time other checks were enroute, all drawn upon a meager and inadequate balance.

Counts 1 and 2 represented checks which followed the usual pattern, except that upon arrival at the Citizens Trust Company there were not sufficient funds to meet them, the deposit of that day being applied to payment of defendant's checks previously issued; whereupon they were returned in the mails through the usual channels to the Cecil bank as NSF (not sufficient funds). Upon arrival at the Cecil bank they were not charged against defendant but merely placed to one side by Wagner. Thereby through the collaboration of Wagner and the defendant and with their knowledge, without legal authority to do so and with intent to defraud the Cecil bank, the moneys, funds and credits of the Cecil bank were converted to defendant's use and the Cecil bank was not secured, repaid or reimbursed for the moneys in question.

Defendant admitted writing checks when he had an insufficient balance in his account to cover—in fact, $4.12 to meet checks of $3,600 and $400 respectively—; that he knew the checks in question, although cashed elsewhere, would have to be cleared through the Citizens Trust Company, and ordinarily to be charged to his account.

■ Count 3 charges that defendant and Wagner's scheme embraced the foregoing and the evidence amply supports it. Here we have a course of action continued over a period of months; checks knowingly drawn on an inadequate balance and therefore not good checks in the usual sense. The use of the mails was an integral and essential part of the required delay, affording an

Similarly as to defendant's motion for judgment of acquittal at the close of all the evidence, here assigned as a reason for a new trial. See 18 U.S.C.A. Fed. Rules Crim.Proc. rule 29(b) and see United States v. Caplan, supra.

opportunity to cover as well as an opportunity to conceal defendant's and Wagner's peculations. To constitute a violation it was not necessary to show defendant actually mailed the checks; it was sufficient to show that he caused it to be done. Pereira v. United States, 1954, 347 U.S. 1, at page 8, 74 S.Ct. 358.

■ The elements of the offense are (1) a scheme to defraud and (2) the mailing of a letter for the purpose of executing the scheme. Although it is not necessary that the scheme contemplate the use of the mails as an essential element, United States v. Young, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548, the scheme here involved actually embraced it. See United States v. Decker, D.C. Md.1943, 51 F.Supp. 15, affirmed Decker v. United States, 4 Cir., 1944, 140 F.2d 378, at page 379, 151 A.L.R. 754. When one does an act with knowledge that use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, he "causes" the mails to be used. United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; Newingham v. United States, 3 Cir., 1925, 4 F.2d 490; Goodman v. United States, 3 Cir., 1938, 97 F.2d 197, at pages 198, 199; United States v. Berg, 3 Cir., 1944, 144 F.2d 173, at page 176, and see United States v. Decker, supra. As to defendant's participation, see Pereira v. United States, supra, 347 U.S. at page 11, 74 S.Ct. at page 364.

■ Defendant relying upon Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, and Dyhre v. Hudspeth, 10 Cir., 1939, 106 F.2d 286, at page 288, argues that the fraud, if any, had been consummated once the checks were cashed; that the use of the mails was not for the purpose of executing any scheme or artifice. We do not agree. Obviously the factual situation here is materially different from that presented in either of those cases. As to the law, see United States v. Sheridan, 329 U.S. 379, at pages 386 to 391, 67 S.Ct. 332, 91 L.Ed. 359; Decker v. United States, supra; United States v. Carruthers, 7 Cir., 1945, 152 F.2d 512, at pages 515, 517; Mitchell v. Hunter, 10 Cir., 1946, 152 F.2d 959, at page 960; United States v. Citrin, D.C., 58 F.Supp. 766, at page 770; United States v. Lowe, 7 Cir., 1940, 115 F.2d 596, certiorari denied 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466; United States v. Vidaver, D.C., 73 F.Supp. 382; United States v. Kuiken, D.C., 101 F.Supp. 929, at pages 930, 931, affirmed 5 Cir., 196 F.2d 223, certiorari denied 344 U.S. 867, 73 S.Ct. 109, 97 L. Ed. 657, rehearing denied 344 U.S. 910, 73 S.Ct. 329, 97 L.Ed. 702; United States v. Kreuter, D.C., 119 F.Supp. 227, at page 231; Bauman v. United States, supra, 156 F.2d at pages 537, 538. As to the scheme involved, see United States v. Citrin, supra; United States v. Lowe, supra; United States v. Feldman, 2 Cir., 1943, 136 F.2d 394, at page 396; Federman v. United States, 7 Cir., 1929, 36 F.2d 441, at page 442, certiorari denied 281 U.S. 729, 50 S.Ct. 246, 74 L.Ed. 1146.

Among the papers found by the FDIC at the Cecil bank were two mortgages and accompanying papers for $5,000 and $3,000 respectively, given by defendant and his wife for money loaned to them by the bank, and covering different properties; an undated blank note signed by defendant for $600, apparently given by him to the bank when a $600 reduction was made on a note for $1,200 previously given, and finally a note for $4,500 signed by defendant and his wife, dated July 21, 1948, without naming a payee or fixing any time payable. The note indicated on its face that it was given "for value received". No such loan was authorized by the bank's officers; granting it was not within Wagner's authority. The bank's records show no payment of interest thereon or reduction therein; nothing to show what if anything defendant and his wife received as consideration therefor when the note was executed or at any time thereafter.

Defendant claimed that the note was executed at Wagner's suggestion, together with blank checks as security for the latter, to be used by defendant whenever he desired to borrow up to $4,500; the checks to be cashed by Wagner only when and as the defendant directed.

Notwithstanding clear credible evidence of defendant cashing the checks at the Cecil bank, defendant denied doing so. In addition there was controverted evidence as to the value of defendant's property and as to his solvency. Defendant contended that in view of the credit arrangement with Wagner and his alleged solvency, as well as his being able to cover the checks when necessary, there was no intent to defraud and could be no misapplication. All evidence as to the foregoing was received, particularly as to defendant's intent.

If the money was taken or misapplied with intent to defraud, restitution would not excuse the previous crime. Duvall v. United States, 3 Cir., 1938, 94 F.2d 911, at page 913; Savitt v. United States, 3 Cir., 1932, 59 F.2d 541, at page 544, and see United States v. Matsinger, 3 Cir., 1951, 191 F.2d 1014, at page 1018; United States v. Kenney, C.C.D.Del.1898, 90 F. 257. See and cf. United States v. Steinman, 3 Cir., 1909, 172 F. 913; Johnson v. United States, 4 Cir., 95 F.2d 813; United States v. Broxmeyer, 2 Cir., 1951, 192 F.2d 230, at page 232; United States v. Wicoff, 7 Cir., 1951, 187 F.2d 886, at pages 890, 891, and see United States v. Stoehr, supra, 100 F.Supp. at pages 159, 160, Id. 3 Cir., 196 F.2d 276, at page 282, 33 A.L.R.2d 836.

In our own language, not precisely that submitted in defendant's points for charge, see United States v. Berg, supra, 144 F.2d at page 177, all issues of fact including defendant's intent and the pertinent law were submitted to the jury in a full, fair, comprehensive charge, to which defendant made no objections. See 18 U.S.C.A.Fed.Rules

Crim.Proc. Rule 30; United States v. Stoehr, supra, 100 F.Supp. at page 152.

For the foregoing reasons, defendant's motions will be denied.