[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10582
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00214-JDW-TBM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GLENN JASEN
KATHRYN JASEN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(May 19, 2017)

Before MARCUS, JULIE CARNES and BLACK, Circuit Judges.

PER CURIAM:

Glenn and Kathryn Jasen appeal their convictions of wire fraud, in violation of 18 U.S.C. § 1343.  They contend the district court erred by denying their motion to dismiss the indictment because the application of the wire fraud statute in this case violates the principles of fair warning and federalism.  They also argue the district court erred by denying their motion for judgments of acquittal because the evidence is insufficient to convict them of wire fraud.  After review,[1] we affirm.

## I. DISCUSSION

The Jasens contend § 1343 fails to give fair warning that it covers their conduct.  Specifically, they assert the statute is unconstitutionally vague as applied to them, that the rule of lenity exempts them from the statute, and that applying the statute to their circumstances violates due process because it would constitute a novel construction.  Each of these arguments fails.

Section 1343 embraces their conduct as it applies to "any" scheme or artifice to defraud, regardless of the type of scheme.  *See* 18 U.S.C. § 1343; *United States v. Svete*, 556 F.3d 1157, 1162 (11th Cir. 2009) (en banc) (stating that the word "any" is read naturally to have an expansive meaning).  The fact that it does not specifically mention real estate transactions does not warrant the conclusion that it

---

[1] We review *de novo* a challenge to the constitutionality of a statute, applying a strong presumption that the statute is valid.  *United States v. Ruggiero*, 791 F.3d 1281, 1284 (11th Cir.), *cert. denied*, 136 S. Ct. 429 (2015).  We also review *de novo* questions of statutory interpretation. *United States v. Taylor*, 818 F.3d 671, 674 (11th Cir.), *cert. denied*, 137 S. Ct. 387 (2016).  We review *de novo* the denial of a motion for judgment of acquittal.  *United States v. Green*, 842 F.3d 1299, 1305 (11th Cir. 2016).  In doing so, we view the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the jury's verdict.  *Id.*

is vague as applied to the Jensens. *United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013) (stating that the vagueness doctrine does not require a statute to define every factual situation that may arise). Nor is the causation element vague; we have referred to the meaning of the word "causes" in the wire fraud statute as "self-explanatory." *United States v. Bradley*, 644 F.3d 1213, 1238–39 (11th Cir. 2011) (noting that mail fraud and wire fraud "are analytically identical save for the method of execution"); *see also United States v. Kenofskey*, 243 U.S. 440, 443 (1917) (stating, in the context of mail fraud, that "'[c]ause' is a word of very broad import and its meaning is generally known"). Finally, the statute's scienter requirement alleviates the Jasens' concern about vagueness and limits the potential for arbitrary enforcement. *See McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015); *Nelson*, 712 F.3d at 510.

Nor does the rule of lenity apply here—the statute is clear. *United States v. Hastie*, No. 15-14481, 2017 WL 1455948, at *5 (11th Cir. Apr. 25, 2017) ("[T]he rule of lenity has no application when the statute is clear." (quotation omitted)). The rule of lenity applies "if at the end of the process of construing what Congress has expressed, there is a grievous ambiguity or uncertainty in the statute." *Shaw v. United States*, 137 S. Ct. 462, 469, 196 L. Ed. 2d 373 (2016) (quotations omitted). The Jasens do not convincingly point to any such ambiguity.

3

In addition, the Jasens' assertion that the application of the wire fraud statute in this case violates their rights to due process is meritless.  Although the Jasens argue to the contrary, caselaw gives reasonable warning that the statute criminalizes a fraud in connection with a real estate transaction.  *See, e.g.*, *Robers v. United States*, 134 S. Ct. 1854, 1856 (2014) (addressing a conviction of conspiracy to commit wire fraud where the defendant submitted fraudulent mortgage loan applications to purchase two houses); *United States v. Martin*, 803 F.3d 581, 588–90 (11th Cir. 2015) (determining that the evidence was sufficient to convict the defendant of wire fraud where she sold an apartment to her father in a "sham sale," assisted him in completing a fraudulent mortgage loan application, and lied in her own mortgage loan application to purchase a house); *United States v. Brester*, 786 F.3d 1335, 1337 (11th Cir. 2015) (addressing convictions of wire fraud and conspiracy to commit wire fraud where the defendant sold apartments and made misrepresentations to the banks to which the buyer had applied for mortgage loans).  In sum, the district court did not err by denying the Jasens' motion to dismiss based on their fair warning claim.

The Jasens' federalism argument is also without merit.  Despite the Jasens' assertion that their conduct occurred locally, the Commerce Clause permits Congress to criminalize a local, intrastate act if a channel of interstate commerce

4

(here, the telecommunications network) is used to facilitate the commission of the act. *United States v. Ballinger*, 395 F.3d 1218, 1225 (11th Cir. 2005) (en banc).

Finally, the Jasens contend there was insufficient evidence to find them guilty beyond a reasonable doubt, but this argument fails as well. Wire fraud requires that a person (1) intentionally participate in a scheme or artifice to defraud another of money or property and (2) use or cause the use of wires for the purpose of executing the scheme or artifice. *Bradley*, 644 F.3d at 1238. The phrase "scheme or artifice to defraud . . . requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.* (quotation omitted). A person causes wires to be used if he acts with knowledge that the use of wires "will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Id.* at 1239 (quotation omitted); *see also United States v. Hasson*, 333 F.3d 1264, 1273 (11th Cir. 2003) (stating that the "transmission itself need not be essential to the success of the scheme to defraud").

It is undisputed the Jasens knew their property had a sinkhole on it when they sold the property —they had already collected over one hundred fifty thousand dollars in insurance proceeds because of it. Nevertheless, they indicated on their disclosure statement that they knew of no sinkhole on the property. They reiterated this misrepresentation in multiple transaction documents and the

purchaser relied on these statements in acquiring the property, testifying he would not have done so had he known of the sinkhole. This evidence, taken in the light most favorable to the Government, demonstrates that the Jasens intentionally made material misrepresentations concerning their property that were calculated to deceive the buyer into purchasing the property. *See Bradley*, 644 F.3d at 1239 ("All that is necessary is that the scheme be reasonably calculated to deceive; the intent element of the crime is shown by the existence of the scheme.").

Similarly, there was sufficient evidence to show the wire transfer was used for the purpose of executing the Jasens' scheme or artifice to defraud. Selling the property and receiving sale proceeds were essential elements of their scheme, and the wire transfer was the means by which they were able to receive the "fruits of the fraud." *United States v. Adkinson*, 158 F.3d 1147, 1163 (11th Cir. 1998) (relating to mail fraud statute). Although a wire transfer may not have been essential to the success of the Jasens' scheme, as the buyer could have paid for the property by means other than an out-of-state loan, the wire transfer was incident to an essential part of the scheme, namely the receipt of sale proceeds. *See Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) (relating to mail fraud statute); *Hasson*, 333 F.3d at 1273.

## II. CONCLUSION

For the foregoing reasons, the Jasens' convictions are

**AFFIRMED.**